IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONJA Y. JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:21-cv-02648-L-BT |
| | § | |
| WALGREENS CO., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil action is Defendant Walgreens Co.'s Motion to Dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15). Due to Plaintiff Tonja Johnson's failure to state a claim for discrimination or retaliation under the American with Disabilities Act (ADA), *see* 42 U.S.C. §§ 12112-12117, the Court recommends GRANTING Walgreens's Motion.

**Background**

In this lawsuit, Johnson alleges that she suffers from several physical disabilities, including "Bilateral Carpel Tunnel Syndrome," "Systemic Lupus Erythematosus related syndrome," "Rheumatoid Arthritis/Osteoarthritis," and chronic lower back pain. Resp. Mag. J. Quest. 2. (ECF No. 10). She further alleges that Walgreens hired her on March 28, 2019, to work as a part-time cashier. Pl.'s Opp. to Mot. to Dismiss (Resp.) 2, 4. (ECF No. 17). On June 24, 2019, after

1

attending a doctor's appointment, Johnson gave her manager a doctor's note indicating that Johnson should "stand[ ] on a padded mat and avoid[ ] lifting more than 10 lbs" to help manage her physical disabilities. Resp. 3 (Work/School Release and Appointment Verification); Resp. Mag. J. Quest. 2. Johnson claims that instead of accepting her doctor's instructions, her manager "continued to procrastinate," "ignored the accommodations" and required Johnson to fill out more forms. Am. Compl. 3-4. (ECF No. 6); Resp. Mag. J. Quest. 1. Two days later, Johnson provided a completed Accommodations Request Form. Resp. 4-6. The manager then spoke with Johnson's doctor and required Johnson's doctor to submit an Additional Information form within fourteen days. Resp. Mag. J. Quest. 3. Johnson delivered this form on July 9, 2019, *id.*, which more specifically stated that Johnson should stand on a padded mat "for the duration of her shift." Resp. 6-8. July 9 was the last day Johnson worked at Walgreens. *See* Resp.

Johnson contends that, from June 24 to July 9, her manager treated her differently from other employees. *See* Resp. 14. Johnson had to "walk back and forth on hard concrete floors" to service several counters, "take out all the trash from inside and outside," and organize the shelves. Am. Compl. 6; Resp. Mag. J. Quest. 1. No other employee was assigned these tasks nor required to help her. *See* Am. Compl. 6. The manager also began only scheduling Johnson for the closing shift, from 4 P.M. to midnight. Am. Compl. 6.

Johnson reminded her manager about her request for accommodations and informed the manager that she "was unable to work" the closing shift because

"[she] didn't have proper childcare" for her granddaughter. Am. Compl. 6; *see also* Am. Compl. 4 ("Now she tried to force upon me to work hours that I continue to inform I couldn't the fact of no childcare."). Although Johnson's granddaughter was enrolled in daycare, Johnson could only work the closing shift when Johnson's sister was available to take care of her granddaughter after daycare. Resp. Mag. J. Quest. 3. Johnson worked the closing shift "the best [she] could" from June 29 through July 7. Resp. Mag. J. Quest. 3. But, Johnson continued to remind her manager that she could not work the closing shift, due to lack of childcare. *Id.* The manager, though, "wasn't trying to compromise." *Id.* The manager informed Johnson that because "that was not in her [hiring contract]," "if [Johnson] could not work those hours [she] wouldn't be working." Am. Compl. 6. The manager suggested that Johnson check other Walgreens store locations to pick up other shifts and she called her "one last time" after July 9 to offer Johnson the closing shift—but Johnson declined, again due to lack of childcare. *See* Resp.; Resp. Mag. J. Quest. 3.

On July 23, 2019, Johnson filed a "Charge of Discrimination" with the EEOC. Resp. 15. In the EEOC charge, Johnson claimed she was discriminated against due to her disability because, after she provided Walgreens with a copy of her Accommodations Request Form, she was not scheduled to work any shifts but the closing shift. *See* Resp. Johnson further stated that on July 9 (the last day she worked), she provided her manager with her availability, but the manager "continued to place [Johnson] on overnight shift work, which part-time

3

employee[s] are not allowed to work . . . according to Walgreen's [sic] policy." Resp. 15. After July 9, Johnson did not work any shifts. And after thirty days of no work activity, per Walgreens's policy, Johnson was "kicked out of the system" and "terminated." *See* Resp. 16.

On November 5, 2019, Johnson filed another Charge of Discrimination with the EEOC, this time claiming retaliation and discrimination in violation of the ADA. *See* Resp. 16. Therein she stated "[a]fter filing the EEOC charge for no-work associated with my work restrictions and reasonable accommodation request, it is my understanding that I have been terminated when [the manager] gave me paper stating that I will fall off the system after 30-days of no work." *See* Resp. Johnson received her Right to Sue letters on April 23, 2021, and July 28, 2021. *See* Def.'s Mot. FN 1.

On October 26, 2021, Johnson filed this civil action asserting claims for employment discrimination and retaliation under the ADA. *See* Compl. 1, 4. ([ECF No. 3](#)). Johnson filed an Amended Complaint ([ECF No. 6](#)) and submitted answers to a Magistrate Judge's Questionnaire (ECF No. 10). Liberally construing her filings, Johnson asserts Walgreens discriminated against her by failing to accommodate her disabilities, subjecting her to unequal terms and conditions of employment, and terminating her employment. *See* Compl. 1, 4. ([ECF No. 3](#)). She further asserts that Walgreens retaliated against her for filing an EEOC charge.

Walgreens filed a Motion to Dismiss ([ECF No. 15](#)) in which it argues that Johnson has failed to state a claim for discrimination or retaliation under the ADA.

4

Johnson filed her Response (ECF No. 17), and Walgreens filed a Reply (ECF No. 18).[1] The Motion is ripe for determination.

## Legal Standards

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). However, when deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes*

---

[1] After Walgreens filed its Reply, Johnson filed two more briefs (ECF Nos. 19, 20). The Court strikes these because they violate the Northern District of Texas's Local Rules against sur-replies. *See* N.D. Tex. Civ. R. 7.1 (limiting briefing in motion practice to the motion, response, and reply); N.D. Tex. Civ. R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence"); *see also Off. Brands, Inc. v. Roc Nation Sports, LLC*, 2017 WL 345616, at *3 (N.D. Tex. Jan. 23, 2017) (Boyle, J.) (applying Local Rule 56.7 to motion to dismiss); *Barrack v. UNUM Am. Life Ins.*, 409 F. Supp. 2d 782, 785 (N.D. Tex. 2006) (same). Johnson did not seek leave to file her sur-replies, nor would the Court have granted leave if requested. The arguments in Johnson's sur-replies are largely repetitive of arguments she made in her response, and—to the extent her arguments are not repetitive—she is not entitled to amend her allegations through her sur-replies. Accordingly, the Court STRIKES Johnson's sur-replies.

*Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

## Analysis

I. <u>The Court should dismiss Johnson's ADA discrimination claim because she fails to plead that she suffered an adverse employment decision.</u>

To state a claim for discrimination claim under the ADA, Johnson must plead sufficient facts to establish (1) she has a disability; (2) she is qualified for the job in question; and (3) she suffered an adverse employment decision because of her disability. *See Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 294 (5th Cir.

1998) (per curiam). Only the third element is at issue in this case, because Walgreens does not contest, for the purpose of its Motion, that Johnson has a disability and was qualified for the position she held.

In the context of a discrimination claim, courts construe the phrase "adverse employment decision" strictly. As the Fifth Circuit recently stated:

> An adverse employment action is a judicially-coined term referring to an employment decision that affects the terms and conditions of employment. We have consistently held that an adverse employment action is an ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating.

*Price v. Wheeler*, 834 F. App'x 849, 855 (5th Cir. 2020) (cleaned up);[2] *see also Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) ("Adverse employment decisions are ultimate employment decisions such as hiring, granting leave, discharging, promoting . . . compensating, or demoting." (cleaned up)). An employment decision that "does not affect job duties, compensation, or benefits" is not an adverse employment decision for purposes of stating a discrimination claim. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). "[A] mere inconvenience or an alteration of job responsibilities will not suffice." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (cleaned up).

---

[2] Although *Price* is Title VII case, the Fifth Circuit has established that it uses the same definition of "adverse employment action" in ADA cases as applies in Title VII cases; i.e., that adverse employment actions consist only of "ultimate employment decisions," such as hiring, granting leave, discharging, promoting or compensating. *McKay v. Johanns*, 265 F. App'x 267, 268–69 (5th Cir. 2008).

Here, Johnson alleges she was discriminated against due to her disability because her manager treated her differently by scheduling her to work only the closing shift and making her walk back and forth between cash registers, take out the trash, and organize the shelves. *See* Am. Compl. 6; Resp. Mag. J. Quest. 1. But none of this alleged conduct constitutes an adverse employment decision for purposes of stating an ADA discrimination claim. In particular, Fifth Circuit precedent currently dictates that changes of work hours and the denial of day shifts are not ultimate employment decisions. *See Mylett v. City of Corpus Christi*, 97 F. App'x 473, 475 (5th Cir. 2004) (per curiam) (unpublished); *see also Hamilton v. Dallas Cnty.*, 2020 WL 7047055, at *2 (N.D. Tex. Dec. 1, 2020) (Godbey, J.) (collecting cases holding that changes to an employee's work schedule are not an ultimate employment decision), *aff'd*, 42 F.4th 550 (5th Cir. 2022), *reh'g en banc granted, opinion vacated*, 50 F.4th 1216 (5th Cir. 2022). Nor is the mere assignment of unpleasant or demeaning duties an ultimate employment decision. *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 554–555 (5th Cir. 1997); *Matthews v. City of Houst. Fire Dep't*, 609 F. Supp. 2d 631, 645 (S.D. Tex. 2009). Johnson failed to allege that she suffered an adverse employment decision. Therefore, the Court should dismiss her discrimination claim.

Johnson's unwillingness or inability to work the closing shift resulted her not being scheduled to work at all. And then, because Johnson did not work for thirty consecutive days, she was "kicked off the system" and she effectively resigned. An employee's resignation can be an adverse employment decision if it

8

constitutes a constructive discharge. *See Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000). A constructive discharge occurs when the "employer deliberately makes an employee's working conditions so intolerable" that the employee's resignation is involuntary. *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 802 (5th Cir. 2018) (quoting *Keelan v. Majesco Software*, Inc., 407 F.3d 332, 342 (5th Cir. 2005)). In other words, the circumstances must be so unbearable that a reasonable employee would feel compelled to resign. *Brown*, 207 F.3d at 782. "Whether a reasonable employee would feel compelled to resign depends on the facts of each case," but courts generally consider the following list of factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* Importantly, the test is an objective one; a plaintiff's subjective beliefs regarding her working conditions are insufficient to meet the "reasonable employee" standard. *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

To the extent Johnson's submissions can be read to attempt to assert a claim for constructive discharge, Johnson has not alleged that Walgreens made her working conditions so intolerable that a reasonable employee would feel compelled to resign. Rather, Johnson alleges that she stopped going to work because her

9

manager only offered to schedule her for the closing shift. This allegation, either by itself or in combination with Johnson's claims that Walgreens also asked her to perform menial tasks like taking out the trash and organizing shelves, does not allow the Court to infer that a reasonable employee would find her working conditions "intolerable." Thus, her allegations are insufficient to support a claim of constructive discharge.

II. **To the extent Johnson's submissions can be construed to assert an ADA failure-to-accommodate claim,[3] the Court should dismiss it because Johnson does not plead facts to show Walgreens was given the opportunity to accommodate Johnson before she resigned.**

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless doing so would impose an undue hardship. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)). Determining an appropriate accommodation for a disabled employee is an interactive process between the employer and the employee. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 735 (5th Cir. 1999). The ADA does not require that the employer move with maximum speed to complete the process of choosing and providing an accommodation. *Id.* at 737. The employer must simply engage in the process in good faith. *Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243,

---

[3] The Court liberally construes Johnson's *pro se* pleadings to attempt to assert a claim for "failure to accommodate." *See* Am. Compl. 6; Resp. Mag. J. Quest. 3, 4 (alleging Walgreens failed to negotiate in good faith and accommodate her disability).

246 (5th Cir. 2016). If either party causes delay in the process, however, it may indicate a lack of good faith. *Id.* ("EEOC enforcement guidance states that '[u]nnecessary delays can result in a violation of the ADA.'") (citations omitted).

Johnson does not allege that she gave Walgreens an opportunity to make the requested accommodations—namely, providing a padded mat for her to stand on and not requiring her to lift more than 10 lbs. Johnson submitted her Accommodations Request Form on June 26, and the "Request for Information" form from her doctor on July 9. Johnson worked her last shift on July 9. Therefore, Walgreens was only aware of the requested accommodations for two-weeks, and only confirmed them on the last day Johnson worked. A two-week delay is not considered "unreasonable." *Schilling*, 662 Fed. Appx. at 247 ("Indeed, undue delay is only an ADA violation to the extent it renders an accommodation (if any) unreasonable; the statute provides no separate claim for undue delay."); *see e.g., Gerton v. Verizon S. Inc.*, 145 Fed. App'x. 159, 168 (6th Cir. 2005) ("[A]n employee cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer's control.") (first citing *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 437 (6th Cir. 1998); then citing *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1262 (10th Cir. 2001)).

Therefore, to the extent Johnson asserts a request for accommodation claim, the Court should dismiss it.

III. <u>The Court should dismiss Johnson's claim that Walgreens retaliated against her for filing an EEOC charge because she fails to allege causation.</u>

"To establish a prima facie case of retaliation under the [ADA], a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Seaman*, 179 F.3d at 301).

Under the ADA, filing an EEOC charge is a protected activity. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). As for the second element, an "adverse employment action" for a retaliation claim differs from an "adverse employment decision" for a discrimination claims. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) "[T]he two provisions differ not only in language but in purpose as well. The antidiscrimination provision seeks a workplace where individuals are not discriminated against . . . [t]he antiretaliation provision seeks to . . . prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id.* (cleaned up). Thus, for a retaliation claim, an adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Marshall v. McDonough*, 2021 WL 3917001, at *10 (N.D. Tex. July 15, 2021), report and recommendation adopted,

2021 WL 3912804 (N.D. Tex. Sept. 1, 2021) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67[4]).

Termination is an adverse employment action that will support a retaliation claim; similarly, scheduling an employee for an undesirable shift could constitute an adverse employment action that will support a retaliation claim. *See Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) ("It is well-settled that a purely lateral transfer is not an adverse employment action. A transfer might be purely lateral if the new position had the same job title, benefits, duties, and responsibilities as the old position. A transfer can be an adverse action if it is the equivalent of a demotion, such that the new position proves objectively worse." (citations and internal quotations omitted)); *see also Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008) (stating "a lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances.").

But, regardless of whether Johnson has pleaded an adverse employment action, she cannot allege a causal connection exists between her protected act—filing the EEOC charge—and the alleged adverse action. "To establish this requisite

---

[4] (first citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 740 (1983) (construing antiretaliation provision to "prohibi[t] a wide variety of employer conduct that is intended to restrain, or that has the likely effect of restraining, employees in the exercise of protected activities," including the retaliatory filing of a lawsuit against an employee); then citing *NLRB v. Scrivener*, 405 U.S. 117, 121–122 (1972) (purpose of the antiretaliation provision is to ensure that employees are " 'completely free from coercion against reporting' " unlawful practices)).

causal link—prong three of the prima facie case—'the evidence must show that the employer's [adverse employment action] was based in part on knowledge of the employee's protected activity.'" *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 588–89 (5th Cir. 2020) The last day that Johnson worked was on July 9, several weeks before she filed the EEOC charge on July 23, 2019. The fact that the date of the filing of Johnson's first EEOC charge is after the alleged retaliatory action began invalidates any causal connection. *See* Mot. 5-6; *see also id.* Further, Johnson does not allege that her manager even knew that Johnson filed the EEOC charge, nor that the filing of the EEOC charge was the reason her manager stopped scheduling her for shifts she was willing to work.

Therefore, the Court should dismiss Johnson's claim for retaliation based on her filing of the EEOC charge.

The Court notes that submitting a request for an accommodation is a protected activity that will give rise to a retaliation claim. *See Stephens v. Big Spring Herald, Inc.*, 2021 WL 3030064, at *17, n.13 (N.D. Tex. Mar. 29, 2021). However, Johnson does not specifically allege that her retaliation claim is based on her protected act of submitting a request for accommodation. And she did not check the box for retaliation on her first EEOC charge. Johnson also does not allege that during her short tenure at Walgreens she ever worked the day shift. In fact, she specifically alleges only that she worked the closing shift and wanted to be scheduled for an earlier shift. Walgreens apparently did not construe Johnson's pleadings as asserting a claim for retaliation based on her protected activity of

14

submitting a request for accommodation, and it did not move for dismissal on this basis. Thus, the Court should not consider any claim for retaliation based on Johnson's submitting a request for accommodation.

However, the Fifth Circuit encourages trial courts to give *pro se* plaintiffs, like Johnson, several opportunities to state a claim upon which relief can be granted. See *Scott v. Byrnes,* 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008) (Fitzwater, C.J.); *Sims v. Tester,* 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001) (Fitzwater, J.). While a court should deny leave to submit futile amendments that are "insufficient to state a claim," *see Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 873 (5th Cir. 2000); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable."); *see also Arkansas v. Wilmington Tr. N.A.,* 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) (citing *Reliance Ins. v. La. Land & Expl. Co.,* 110 F.3d 253, 258 (5th Cir. 1997) (noting "judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case" (citing *Turnage v. Gen. Elec. Co.,* 953 F.2d 206, 208-09 (5th Cir. 1992)))), it is not clear here that any amendment would be futile. Accordingly, the Court should grant Johnson one final opportunity to amend her claim for ADA retaliation.

## Recommendation

The Court should GRANT Walgreen's Motion to Dismiss and DISMISS with prejudice Johnson's ADA discrimination claim and her ADA retaliation claim based on her filing an EEOC charge. However, the Court should give Johnson one final opportunity to amend her complaint to state a viable ADA retaliation claim.

**SO RECOMMENDED.**

February 6, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).